AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| ONE BLACK TABLET WITH IMEI 016095000500332 AND EVIDENCE BARCODE E6996352 | ) |

Case No.   MR 22-182

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated by reference).

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of and possession with intent to distribute controlled substances |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:

Please see the attached affidavit of FBI Special Agent Samuel Hartman, which is incorporated by reference and has been reviewed and approved by AUSA Lou Mattei.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Samuel Hartman, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_telephonically sworn and electronically signed_   *(specify reliable electronic means).*

Date:   February 4, 2022
_____
*Judge's signature*

City and state:   Farmington, New Mexico

Honorable B. Paul Briones, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:

1. ONE BLACK TABLET WITH IMEI
   016095000500332 AND EVIDENCE
   BARCODE E6996352;

2. ONE BLACK TABLET WITH IMEI
   016095000527269 AND EVIDENCE
   BARCODE E6996353;

3. ONE ROSE GOLD APPLE IPHONE
   WITH EVIDENCE BARCODE
   E6996351;

4. ONE GRAY APPLE IPHONE WITH
   EVIDENCE BARCODE E6996350;

5. ONE BLACK APPLE IPHONE WITH
   EVIDENCE BARCODE E6996359;

6. ONE BLACK APPLE IPHONE WITH
   EVIDENCE BARCODE E6996360;      Case No. _____

7. ONE BLACK APPLE IPHONE WITH
   EVIDENCE BARCODE E6996361;

8. ONE TCC CELL PHONE WITH IMEI
   016000001420845 AND EVIDENCE
   BARCODE E6996342;

9. ONE BLACK SAMSUNG CELL
   PHONE WITH EVIDENCE
   BARCODE E6996343;

10. ONE BLUE MOTOROLA CELL
    PHONE WITH EVIDENCE
    BARCODE E6996344;

11. ONE LIGHT BLUE IPHONE IN
    BLACK CASE WITH EVIDENCE
    BARCODE E6996408; AND

12. ONE BLACK ANDROID CELL
PHONE WITH EVIDENCE
BARCODE E6996425,

CURRENTLY LOCATED AT 4200
LUECKING PARK AVENUE NE,
ALBUQUERQUE, NEW MEXICO 87107.

## **GLOBAL AFFIDAVIT IN SUPPORT OF APPLICATIONS UNDER RULE 41 FOR WARRANTS TO SEARCH AND SEIZE**

I, Samuel Hartman, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—12 electronic devices—which are currently in law enforcement possession and further described in Attachments A, and the extraction from that property of electronically stored information described in Attachments B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April 2009.  I am currently assigned to the Albuquerque Field Office to investigate violations of Federal law, including Titles 18 and 21 of the United States Code.  My experience as a Special Agent includes but is not limited to writing affidavits for and executing search and seizure warrants for electronic devices (phones, digital cameras, portable media players such as iPods or MP3 players, dashboard GPS navigation), and reviewing the data extracted from such devices for evidence.  I have also spoken with other law enforcement officers with expertise and experience in this area.

2

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

4.      The application seeks authorization to search a total of 12 electronic devices seized from Mario GUIZAR-ANCHONDO and Werni LOPEZ-PEREZ on five separate occasions in December 2021 and January 2022 (collectively, the **Target Devices**).  As described below, there is probable cause to believe GUIZAR-ANCHONDO and LOPEZ-PEREZ have violated 21 U.S.C. § 846, that being conspiracy, and 21 U.S.C. § 841(a)(1), that being distribution of and possession with intent to distribute fentanyl and methamphetamine, among other potential crimes.  There is also probable cause to believe the electronic devices identified in this affidavit were used in furtherance of those crimes and/or will contain evidence of those crimes.

5.      As described in more detail below, the **Target Devices** were seized from GUIZAR-ANCHONDO and/or LOPEZ-PEREZ on five separate occasions in December 2021 and January 2022, as described below.  For ease of reference, this affidavit will describe the **Target Devices** in five groups—one for each date of seizure—and the individual devices will be referred to, where necessary, using the numbers assigned in the table below:

| Group 1 Devices *Seized from LOPEZ-PEREZ on Dec. 4, 2021* | Group 2 Devices *Seized from GUIZAR-ANCHONDO on Dec. 18, 2021* |
|---|---|
| 1. One black tablet with IMEI 016095000500332 and evidence barcode E6996352;<br>2. One black tablet with IMEI 016095000527269 and evidence barcode E6996353;<br>3. One rose gold Apple iPhone with evidence barcode E6996351;<br>4. One gray Apple iPhone with evidence barcode E6996350. | 5. One black Apple iPhone with evidence barcode E6996359;<br>6. One black Apple iPhone with evidence barcode E6996360;<br>7. One black Apple iPhone with evidence barcode E6996361. |
| Group 3 Devices *Seized from GUIZAR-ANCHONDO and LOPEZ-PEREZ on Dec. 30, 2021* | Group 4 Device *Seized from LOPEZ-PEREZ on Jan. 19, 2022* |
| 8. One TCC cell phone with IMEI 016000001420845 and evidence barcode E6996342;<br>9. One black Samsung cell phone with evidence barcode E6996343;<br>10. One blue Motorola cell phone with evidence barcode E6996344. | 11. One light blue iPhone in black case with evidence barcode E6996408. |
| Group 5 Device *Seized from GUIZAR-ANCHONDO on Jan. 20, 2022* | |
| 12. One black Android cell phone with evidence barcode E6996425. | |

6.      For the **Target Devices** identified above without IMEI or serial numbers listed, law enforcement was unable to locate any further identifying markings on the devices from a preliminary external examination.  Based on my training and experience, this is not uncommon

for electronic devices, to include many Apple and Samsung devices. However, each of the **Target Devices** is identified by a unique evidence barcode number, as listed above.

7.      All of the **Target Devices** are currently located in evidence storage at FBI Albuquerque, at 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107. They came into law enforcement's custody incident to the searches and seizures described in more detail below. Based on my training and experience, I know that they have been stored in such a manner that their contents are, to the extent material to the investigation, in substantially the same state as they were when they first came into law enforcement custody.

8.      The applied-for warrants would authorize forensic examinations of the **Target Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

## DRUG TRAFFICKING AND ELECTRONIC DEVICES

9.      Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute and possess with intent to distribute controlled substances, I have learned the following:

      a.   Those who possess illegal drugs for distribution often use electronic devices such as wireless or cellular telephones and smartphones. Such electronic devices are often used to communicate with coconspirators and customers through the telephone's standard capabilities to call and text, as well as through smartphone applications ("apps") such as WhatsApp, Snapchat, Pinger, Marco Polo and Facebook, which allow users to send and receive digital communications in various forms such as voice calls, text messages, image and video sharing, and

live video conversations. Records of these communications, text messages, and contact lists are frequently retained and stored on those electronic devices and within those apps. Based upon my training, experience, and knowledge of this investigation, I believe that such evidence and information is likely to be found in the **Target Devices**.

b. Individuals involved in the illegal trafficking of controlled substances often maintain documents, records, and other evidence of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists and telephone address books. These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances including precursors, customer lists and amounts of money owed to the trafficker by customers and by the trafficker to his/her suppliers. All such records can also be produced and/or stored on cellular telephones and evidence of these transactions is often contained within cellular phones.

c. Drug dealers often travel domestically and internationally to facilitate their trafficking. Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, hotel and gas receipts,

and passports and visas and their contents. Many of these items are accessible via the internet and can be downloaded and saved on the computer or other media such as cellular phones.

d.   Drug trafficking is a crime that necessarily involves at least two people – a buyer and a seller. Prior to engaging in the drug transaction, the buyer and seller must communicate and discuss the type of drug to be sold, the quantity, the price, and the location where the sale will take place. I know that drug dealers and their customers make use of cellular phones and smartphones to conduct these necessary communications.

e.   Information stored in electronic form on cellular telephones can provide evidence of drug trafficking and the identity of associates. For example, numbers stored on cellular telephones (such as Caller ID lists reflecting recently received calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the drug dealer is calling, and thus the identity of associates.

f.   Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, drug trafficking records, records of financial transactions involving drug trafficking proceeds, their drugs, and firearms. They usually take these photographs and/or videos with their cellular phones and store them in those cellular phones.

g.   I know that those engaged in drug trafficking have access to, and utilize, numerous cellular telephones, often at the same time in an effort to avoid law enforcement monitoring.

7

h.  Electronic information can remain on computer storage media, such as within cellular phones, for an indefinite period of time. I am aware that even when a user attempts to delete records from computer storage media, the records may still exist and be recovered through computer forensic techniques.

## PROBABLE CAUSE

### I.  Background of Investigation

10.  In approximately September 2021, the Santa Fe Police Department (SFPD), the FBI, and the Drug Enforcement Administration (DEA) began investigating GUIZAR-ANCHONDO, LOPEZ-PEREZ, and other suspected members of their drug-trafficking organization (DTO) for possible drug-trafficking crimes.  The DTO is suspected of distributing large amounts of fentanyl and methamphetamine in the Santa Fe, New Mexico, area, and appears to have access to large numbers of firearms.

11.  In the course of this investigation, SFPD officers, DEA agents, and myself have observed numerous social media posts published by GUIZAR-ANCHONDO and LOPEZ-PEREZ that are consistent with each of them possessing and distributing illegal drugs.  Law enforcement have identified the following Facebook accounts as being associated with these two individuals:

a.  GUIZAR-ANCHONDO appears to use and control a Facebook account with the username "mario.guizar.908" and screenname "Stg Listo."

b.  LOPEZ-PEREZ appears to use and control a Facebook account with the user ID 100054136368879 and screenname "Riicky R. Riick."

8

12.     Based on my training and experience, it is common for drug traffickers to use mobile electronic devices, like cell phones or tablets, to create and publish social media posts like those described below.

13.     Below is an example of a Facebook post made by GUIZAR-ANCHONDO on his "Stg Listo" account in approximately September 2021.  The post is a photograph of GUIZAR-ANCHONDO, holding a cell phone in one hand, with the words "HMU HMU GOT SINGLES AND BULK TAPN," along with several emojis, including the emoji of a cell phone with a blue arrow next to it.  Based on my training and experience, I know "HMU" is slang for "hit me up" and is commonly used by drug dealers to solicit customers to contact them in reference to illegal drugs for sale.  Based on the inclusion of the cell phone/arrow emoji, I believe the post is directing customers to contact GUIZAR-ANCHONDO on his cell phone.  I also know that "singles" and "bulk" are commonly used slang for either user-level or bulk-quantity amounts of illegal drugs.  Based on my training and experience, I also know the phrase "tap in" (abbreviated in this post as "TAPN") is commonly used by drug dealers to solicit drug customers to contact them regarding the purchase of illegal drugs.  I also know that the emoji of the letter M in a blue circle is commonly used as shorthand for fentanyl pills due to the similarity in appearance to an actual fentanyl pill, which are commonly blue in color and imprinted with "M" on one side and "30" on the other.  Therefore, based on my training and experience, I believe this post is an advertisement by GUIZAR-ANCHONDO soliciting customers for illegal fentanyl pills.



a.

14.     On or about December 7, 2021, GUIZAR-ANCHONDO, using the Facebook account with screen name "Stg Listo," posted the photograph depicted below to a private chat group on Facebook Messenger, followed by the words "Get at me" and "Going fast."  Based on my training and experience and the other facts described in this affidavit, I believe the items depicted in the photograph are consistent in appearance with fentanyl pills and methamphetamine.   I also believe the words "Get at me" and "Going fast" were intended to

solicit customers to contact GUIZAR-ANCHONDO about purchasing the apparent drugs

depicted in the photograph.



a.

15.     On or about December 29, 2021, a SFPD officer viewed the Facebook post below,

which was posted on that date to LOPEZ-PEREZ's Facebook account under the screenname

"Riicky R. Riick."  The photograph shows the two vehicles, one of which appears to be a white

Ford truck.  It also includes the words "@ STG LISTO" and "We onnnnit… Taaaaap the fuck in

for the best [illegible] blus , clr , nd [illegible] in town.."  The message also includes several

emojis.  Based on my training and experience, I know that social media users often direct

messages to other users by using the "@" symbol followed by a specific user's screen name.

Here, LOPEZ-PEREZ appeared to be directing the message to the screenname "Stg Listo."  As

described above, that Facebook screenname is used by GUIZAR-ANCHONDO.  Based on my

11

training and experience, I also know the phrase "tap in" is commonly used by drug dealers to

solicit drug customers to contact them regarding the purchase of illegal drugs.  I also know that

the term "blues" (misspelled in the below post as "blus") is common slang for fentanyl pills due

to their blue color.  Similarly, as described above, the emoji of a blue circle around the letter "M"

is commonly used as shorthand for fentanyl pills.  I also know that the term "clear" (misspelled

in the below post as "clr") is commonly used slang for methamphetamine.  Therefore, based on

all of this information, I believe the post below indicates LOPEZ-PEREZ and GUIZAR-

ANCHONDO were advertising the sale of fentanyl pills and methamphetamine on December 29,

2021.



a.

12

16.     On December 29, 2021, Guizar-ANCHONDO posted the image below on his Facebook account using the screenname "Stg Listo."  The post was observed by SFPD on the same date.  The photograph appears to depict the interior of a car and is overlain with the words "TAPN NEW MEX . . . COME GET YOUR BAG UP . . . GRUB FOR EVERYONE," along with several emojis, including the same blue circle with the letter M described above, as well as the same cell phone/arrow emoji described above.  Again, I know the phrase "tap in" is commonly used by drug dealers to solicit drug customers to contact them regarding the purchase of illegal drugs.  I also know the emoji of a blue circle around the letter "M" is commonly used as shorthand for fentanyl pills.  The emoji of a cell phone with an arrow next to it is often used to indicate a request to contact someone on a cell phone, which is consistent with the other content of this post.  This post also included an emoji of an ice cube.  Based on my training and experience, I know that "ice" is a common slang term for methamphetamine.  Therefore, I believe the post below is consistent with Guizar-ANCHONDO advertising the sale of fentanyl pills and methamphetamine.



a.

## II.    The Group 1 Devices

17.     On December 4, 2021, SFPD officers initiated an encounter with a white Ford F-150 truck based, in part, on a citizen report that the truck was involved in a narcotics transaction in a specific area in Santa Fe, New Mexico.  The responding officer detained the truck and asked the driver, who was identified as LOPEZ-PEREZ, to exit the truck for questioning.  A passenger was also present in the front passenger seat of the truck.  As LOPEZ-PEREZ opened the door and exited the truck, a sum of loose cash fell out of the truck and into the street.  In addition, a

responding officer observed a handgun in LOPEZ-PEREZ's waistband. The handgun was seized, and LOPEZ-PEREZ was detained pending further investigation.

18.     After the firearm was secured, LOPEZ-PEREZ spontaneously stated, "Everything is mine, everything in the truck is mine."

19.     Officers then observed a bag under the center console of the truck that appeared to contain a large number of blue pills. The pills bore the imprint of "M" and "30." Based on my training and experience, I know that those markings are consistent with the pills being fentanyl pills.

20.     LOPEZ-PEREZ was placed under arrest for drug trafficking and other crimes. The responding SFPD officers sealed the truck pending the approval of a state warrant to search the truck.

21.     On December 10, 2021, law enforcement searched the truck pursuant a state search warrant. The items seized from the truck's passenger cabin included:

    a.   Approximately 635 gross grams of a substance that field-tested positive for methamphetamine. Based on my training and experience, this amount of methamphetamine is consistent with distribution, not personal use.

    b.   Approximately 400 blue pills with "M" and "30" imprinted on them. Based on my training and experience, the color and markings on these pills are consistent with the pills being fentanyl. Based on my training and experience, this quantity of fentanyl pills is consistent with distribution, not personal use.

    c.   One Smith & Wesson .38 Airweight handgun (serial number DDX8032).

15

    d.   Approximately $18,512 in U.S. currency.  The bulk of this cash—approximately

         $15,735—was found in tightly wrapped bundles in a black bag on the floor of the

         backseat of the truck.

    e.   A pocket-size digital scale.

    f.   Approximately four glass pipes.

    g.   The **Group 1 Devices**:

         i.   **Target Device 1** was found inside the driver's side seat pocket.

         ii.   **Target Device 2** was found inside the passenger side seat pocket.

         iii.   **Target Device 3** was found in the front center armrest.

         iv.   **Target Device 4** was found on the driver's side floorboard.

22.    Based on the evidence seized from the truck that LOPEZ-PEREZ was driving on December 4, 2021, LOPEZ-PEREZ's statement about "everything" in the truck belonging to him, and the other of the facts included in this affidavit, there is probable cause to believe the **Group 1 Devices** will contain evidence violations of 21 U.S.C. § 846, that being conspiracy, and 21 U.S.C. § 841(a)(1), that being distribution of and possession with intent to distribute fentanyl and methamphetamine.

**III.    The Group 2 Devices**

23.    On December 18, 2021, SFPD officers attempted to engage in a lawful traffic stop of a vehicle traveling at a high rate of speed.  One of the patrol officers visually identified the vehicle as a vehicle that GUIZAR-ANCHONDO commonly drove.  The officer initially began pursuing the vehicle with lights and sirens activated.  However, the vehicle began driving recklessly, so the officer stopped his pursuit for public safety, while maintaining visual contact

with the car from a safe distance.  Ultimately, the car appeared to crash in an empty dirt lot, and the officer observed two occupants run from the vehicle.

24.     While near the scene, the officers located and detained one of the occupants who was earlier observed running from the crashed vehicle.  This individual admitted to being a passenger in the car and told the officers that GUIZAR-ANCHONDO was driving when the vehicle crashed.

25.     Officers later determined the car was registered to Gladis Carrera-Anchondo, who is the sister of GUIZAR-ANCHONDO.   Also, near the vehicle, officers found a bible inscribed with the name Juan Carlos Guerra, who is GUIZAR-ANCHONDO's brother.

26.     SFPD officers sealed the vehicle, towed it, and obtained a state warrant to search it.  On or about December 20, 2021, officers executed the search warrant and found the following, among other items:

    a.   Approximately 1,959 blue pills, weighing approximately 267 gross grams.  The pills were consistent in appearance with fentanyl pills.  Based on my training and experience, this quantity of fentanyl pills is consistent with distribution, not personal use.

    b.   Approximately 409.1 gross grams of a white powdery substance that field-tested positive for methamphetamine.  Based on my training and experience, this amount of methamphetamine is consistent with distribution, not personal use.

    c.   Six firearms.

    d.   The **Group 2 Devices**:

        i.   **Target Device 5** was found near the driver's seat.

        ii.   **Target Device 6** was found near the front passenger seat.

    iii.  **Target Device 7** was found in the rear passenger seat.

**IV.**    **The Group 3 Devices & Indictment**

27.    On December 30, 2021, at approximately 2:30 a.m., a SFPD officer was patrolling traffic on Cerrillos Road in Santa Fe, New Mexico, when he noticed a vehicle traveling without operational taillights. Upon further investigation, the officer determined this vehicle was the same white Ford F-150 described above in connection with the December 4, 2021, encounter and the **Group 1 Devices**.

28.    The officer initiated a traffic stop on the truck due to the lack of taillights. The driver was identified as GUIZAR-ANCHONDO, and the sole passenger was identified as LOPEZ-PEREZ. The officer advised GUIZAR-ANCHONDO of the reason for the stop. GUIZAR-ANCHONDO stated he knew the wires had been cut to the taillights, rendering them inoperable. Neither GUIZAR-ANCHONDO nor Lopez-PEREZ had a valid driver's license. Therefore, the officer advised the occupants that the truck would be towed to an impound lot.

29.    Prior to towing the truck, the officer began to conduct an inventory search of the passenger cabin. At that time, the officer observed four firearms, several backpacks with locks on them, a large crystal meth pipe, a small crystal meth pipe, and a small digital scale. Based on my training and experience, I know these items are consistent with drug use and drug trafficking. The officer ceased the inventory search at that time and sealed the truck, pending the issuance of a search warrant.

30.    Later on December 30, 2021, the truck was transferred to FBI custody at 4200 Luecking Park Avenue NE, Albuquerque, NM 87107. I obtained and helped execute a federal search warrant on the truck. The items seized from the passenger cabin of the truck on that date included:

a. Approximately 1,730.7 gross grams of suspected methamphetamine, a sample of which field-tested positive for methamphetamine. Based on my training and experience, this amount of methamphetamine is consistent with distribution, not personal use.

b. Approximately 3,401.5 gross grams of blue pills with "M" and "30" imprinted on them. The pills were packaged into approximately 32 bags with about 1,000 pills each. Based on my training and experience, the color and markings on these pills are consistent with the pills being fentanyl. Based on my training and experience, this quantity of fentanyl pills is consistent with distribution, not personal use.

c. Five loaded firearms.

d. Approximately $5,563 in U.S. currency.

e. Approximately five glass pipes with apparent drug residue.

f. The **Group 3 Devices**:

   i. **Target Devices 8, 9, and 10** were all found in the glove box.

31.  On January 11, 2022, a federal grand jury returned an indictment charging Guizar-ANCHONDO and Lopez-PEREZ in four counts related to the December 30, 2021, incident:

a. Count 1: 21 U.S.C. § 846: Conspiracy;

b. Count 2: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting;

     c. Count 3: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A): Possession with Intent to

        Distribute 500 Grams and More of a Mixture and Substance Containing

        Methamphetamine; 18 U.S.C. § 2: Aiding and Abetting; and

     d. Count 4: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a

        Drug Trafficking Crime; 18 U.S.C. § 2: Aiding and Abetting.

     32.     On the same date, arrest warrants were issued for Guizar-ANCHONDO and

Lopez-PEREZ in connection with the indictment.

**V.     The Group 4 Device**

     33.     On January 19, 2022, LOPEZ-PEREZ and his girlfriend arrived at the Santa Fe

Police Department attempting to recover LOPEZ-PEREZ's personal belongings from the

aforementioned encounters with SFPD and to retrieve the white Ford F-150, which is registered

to LOPEZ-PEREZ's girlfriend.  At that time, both LOPEZ-PEREZ and his girlfriend were

arrested by SFPD on state arrest warrants.  The arresting officers seized **Target Device 11** from

LOPEZ-PEREZ incident to this arrest.

**VI.     The Group 5 Device**

     34.     On January 20, 2022, a SFPD officer encountered GUIZAR-ANCHONDO on

West Alameda Street, in Santa Fe, New Mexico.  GUIZAR-ANCHONDO was wanted on federal

and state arrest warrants at that time.  The officer placed GUIZAR-ANCHONDO under arrest.

GUIZAR-ANCHONDO was carrying **Target Device 12** on his person at the time of this arrest.

**Target Device 12** was seized by law enforcement at that time.

     35.     GUIZAR-ANCHONDO was also carrying a backpack on his person at the time of

this arrest.  This backpack was subsequently searched pursuant to a federal search warrant.  On

February 2, 2022, that warrant was executed.  The following items were found in GUIZAR-ANCHONDO's backpack:

    a.   One loaded Glock 23 firearm.

    b.   Approximately 1,191.9 gross grams of blue pills with "M" and "30" imprinted on them.  Based on my training and experience, I know the blue pills to be consistent in appearance with fentanyl.  I also know that this quantity of fentanyl is consistent with distribution, not personal use.

    c.   Approximately 441.11 gross grams of suspected methamphetamine that field-tested positive for methamphetamine.  Based on my training and experience, I know that this quantity of methamphetamine is consistent with distribution, not personal use.

## VII.   Custody of the Target Devices

36.   The **Target Devices** are currently in the lawful possession of the FBI.  They came into the FBI's possession in the following way:

    a.   The **Group 1 Devices** were seized by SFPD during the execution of a state search warrant and subsequently transferred into FBI custody.

    b.   The **Group 2 Devices** were seized by SFPD during the execution of a state search warrant and subsequently transferred into FBI custody.

    c.   The **Group 3 Devices** were seized by the FBI pursuant to the execution of a federal search warrant and remain in FBI custody.

    d.   The **Group 4 Device** was seized by SFPD incident to the arrest of LOPEZ-PEREZ and subsequently transferred into FBI custody.

e.   The **Group 5 Device** was seized by SFPD incident to the arrest of GUIZAR-

ANCHONDO and subsequently transferred into FBI custody.

37.    The **Target Devices** are currently in storage at 4200 Luecking Park Avenue NE,

Albuquerque, New Mexico 87107.  In my training and experience, I know that the **Target**

**Devices** have been stored in a manner in which their contents are, to the extent material to this

investigation, in substantially the same state as they were when they first came into the

possession of the FBI.

<u>**TECHNICAL TERMS**</u>

38.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

g.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication

through radio signals.  These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call

log," which records the telephone number, date, and time of calls made to and

from the phone.  In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities.  These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and

storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing

and downloading information from the Internet.  Wireless telephones may also

include global positioning system ("GPS") technology for determining the location of the device.

h.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

i.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

j.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

23

location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

k.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

24

l. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

39. Based on my training, experience, and research, I know that the **Target Devices** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, a PDA, and/or a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

41. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each **Target Device** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Devices** because:

25

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the **Target Devices**

26

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

43.     *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

44.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Devices** described in Attachments A to seek the items described in Attachments B.

45.     This application has been reviewed and approved by AUSA Lou Mattei.


Respectfully submitted,


Samuel Hartman
Special Agent
Federal Bureau of Investigation


Telephonically sworn and electronically signed
On February 4, 2022:

HONORABLE B. PAUL BRIONES
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is one black tablet with IMEI 016095000500332 and evidence barcode E6996352 (**Target Device 1**).  **Target Device 1** is currently located in evidence storage at FBI Albuquerque, at 4200 Luecking Park Avenue NE, Albuquerque, New Mexico, 87107.

This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on **Target Device 1** described in Attachment A that relate to

violations of 21 U.S.C. §§ 841(a)(1) or 846, and involve Mario GUIZAR-ANCHONDO or

LOPEZ-PEREZ, including:

      a.   data and information identifying co-conspirators, customers, and suppliers;

      b.   communications between co-conspirators, customers, and suppliers;

      c.   data and information regarding the types, amounts, and prices of drugs trafficked

          as well as dates, places, and amounts of specific transactions;

      d.   data and information related to sources of drugs (including names, addresses,

          phone numbers, or any other identifying information);

      e.   photographs and/or videos;

      f.   financial records or other information regarding the expenditure or disposition of

          proceeds from the distribution of controlled substances including all bank records,

          checks, credit card bills, account information, and other financial records; and

      g.   records of travel.

2.      Evidence of user attribution showing who used or owned the Device at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

      As used above, the terms "records" and "information" include all of the foregoing items

of evidence in whatever form and by whatever means they may have been created or stored,

including any form of computer or electronic storage (such as flash memory or other media that

can store data) and any photographic form.

2

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.